Approved: _____
          KATHERINE REILLY
          Assistant United States Attorney

Before:   THE HONORABLE JAMES L. COTT          **21 MAG 4397**
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA      :    **SEALED COMPLAINT**
                              :    Violations of
          - v. -              :    18 U.S.C §§ 1031, 1014,
                              :    1343, 1344, 1001, 645,
                              :    1957, and 2.
MARCUS FRAZIER,               :
                              :    COUNTY OF OFFENSE:
               Defendant.     :    NEW YORK
                              :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        SIMON DINITS, being duly sworn, deposes and says that he is
a Special Agent with the Office of the Inspector General, United
States Small Business Administration ("SBA-OIG") and charges as
follows:

                              COUNT ONE
                (Major Fraud Against the United States)

        1.    From in or about May 2020 through at least in or about
April 2021, in the Southern District of New York and elsewhere,
MARCUS FRAZIER, the defendant, willfully and knowingly executed,
and attempted to execute, a scheme and artifice with the intent
to defraud the United States, and to obtain money and property
by means of false and fraudulent pretenses, representations, and
promises, in a grant, contract, subcontract, subsidy, loan,
guarantee, insurance, and other form of Federal assistance,
including through an economic stimulus, recovery and rescue plan
provided by the Government, the value of which was $1,000,000
and more, to wit, FRAZIER engaged in a scheme to obtain more
than $5.8 million in Government-guaranteed loans by means of
false and fraudulent pretenses, representations, and documents,
for multiple companies controlled by FRAZIER, namely Frazier,
Pringle & Myers, FPM Strategies, and Frazier Consulting
(collectively, the "Frazier Companies"), through a loan program
of the United States Small Business Administration (the "SBA")

designed to provide relief to small businesses during the novel coronavirus/COVID-19 pandemic, namely the Paycheck Protection Program (the "PPP").

(Title 18, United States Code, Sections 1031 and 2.)

COUNT TWO
(Bank Fraud)

2.    From in or about May 2020 through at least in or about April 2021, in the Southern District of New York and elsewhere, MARCUS FRAZIER, the defendant, willfully and knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, FRAZIER engaged in a scheme to obtain Government-guaranteed loans for the Frazier Companies from FDIC-insured banks through the PPP by means of false and fraudulent pretenses, representations, and documents.

(Title 18, United States Code, Sections 1344 and 2.)

COUNT THREE
(Wire Fraud)

3.    From in or about May 2020 through at least in or about April 2021, in the Southern District of New York and elsewhere, MARCUS FRAZIER, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, FRAZIER engaged in a scheme to obtain Government-guaranteed loans for the Frazier Companies from the SBA and financial institutions through the PPP by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Section 1343 and 2.)

COUNT FOUR
(Making False Statements to a Bank)

4.    From in or about May 2020 through at least in or about
April 2021, in the Southern District of New York and elsewhere,
MARCUS FRAZIER, the defendant, knowingly made a false statement
and report and willfully overvalued land, property, and
security, for the purpose of influencing the actions of a
financial institution, the accounts of which were insured by the
FDIC, in connection with an application, advance, discount,
purchase, purchase agreement, repurchase agreement, commitment,
and loan, and insurance agreement and application for insurance
and a guarantee, and charge and extension of any of the same, by
renewal, deferment of action and otherwise, and the acceptance,
release and substitution of security therefor, to wit, FRAZIER
made false statements regarding, among other things, the number
of employees of the Frazier Companies, the wages paid to
employees of the Frazier Companies, and the disbursement of
proceeds of PPP loans, for the purpose of obtaining Government-
guaranteed loans and/or loan forgiveness for the Frazier
Companies from FDIC-insured banks through the PPP.

(Title 18, United States Code, Sections 1014 and 2.)

COUNT FIVE
(Making False Statements)

5.    From at least in or about May 2020 through at least in
or about April 2021, in the Southern District of New York and
elsewhere, MARCUS FRAZIER, the defendant, in a matter within the
jurisdiction of the executive branch of the Government of the
United States, knowingly and willfully falsified, concealed and
covered up by a trick, scheme and device a material fact, made a
materially false, fictitious, and fraudulent statement and
representation and made and used a false writing and document
knowing the same to contain a materially false, fictitious, and
fraudulent statement and entry, to wit, FRAZIER made false and
misleading statements to the SBA regarding, among other things,
the number of employees of the Frazier Companies and the usage
of proceeds of a PPP loan, for the purpose of obtaining loans

for the Frazier Companies through the PPP administered by the SBA.

(Title 18, United States Code, Sections 1001 and 2.)

COUNT SIX
(Making False Statements to the SBA)

6.    From in or about May 2020 through at least in or about April 2021, in the Southern District of New York and elsewhere, MARCUS FRAZIER, the defendant, knowingly and willfully made a false statement, knowing such statement to be false, for the purpose of obtaining a loan, extension thereof by deferral of action and otherwise, and the acceptance, release and substitution of security therefor, for himself and an applicant, influencing in any way the action of the SBA, and obtaining money, property, or anything of value, under Chapter 14 of Title 15 of the United States Code, to wit, FRAZIER made false and misleading statements to the SBA regarding, among other things, the number of employees of the Frazier Companies and the usage of proceeds of a PPP loan, for the purpose of obtaining loans for the Frazier Companies through the PPP administered by the SBA.

(Title 18, United States Code, Section 645(a) and 2.)

COUNT SEVEN
(Money Laundering)

7.    From in or about May 2020 through at least in or about August 202, in the Southern District of New York and elsewhere, MARCUS FRAZIER, the defendant, in an offense involving and affecting interstate and foreign commerce, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the bank fraud and wire fraud offenses charged in Counts Two and Three of this Complaint.

(Title 18, United States Code, Section 1957 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

8.    I am a Special Agent with the Office of Inspector General of the U.S. Small Business Administration ("SBA"). I am currently assigned to the Investigations Division, and as part of my duties, I have participated in numerous investigations of

financial fraud relating to loan programs administered by the
SBA. I am familiar with the facts and circumstances set forth
below from my personal participation in the investigation,
including my examination of reports and records, interviews in
which I have participated, and conversations with other law
enforcement officers and other individuals.  Because this
affidavit is being submitted for the limited purpose of
establishing probable cause, it does not include all the facts
that I have learned during the course of my investigation.
Where the contents of documents and the actions, statements and
conversations of others are reported herein, they are reported
in substance and in part, unless noted otherwise.

     9.   Based upon my involvement in this investigation,
including my review of publicly available information
disseminated by the SBA, I am aware of the following, in
substance and in part:

          a.   The SBA is a federal agency of the Executive
Branch that administers assistance to American small businesses.
This assistance includes guaranteeing loans that are issued by
certain lenders to qualifying small businesses. Under the SBA
loan guarantee programs, the actual loan is issued by a
commercial lender, but the lender receives the full faith and
credit backing of the United States Federal Government on a
percentage of the loan. Therefore, if a borrower defaults on an
SBA-guaranteed loan, the commercial lender may seek reimbursement
from the SBA, up to the percentage of the guarantee. By reducing
the risk to commercial lenders, the SBA loan guarantee programs
enable lenders to provide loans to qualifying small businesses
when financing is otherwise unavailable to them on reasonable
terms through normal lending channels. When a borrower seeks an
SBA-guaranteed loan, the borrower must meet both the commercial
lender's eligibility requirements for the loan as well as the
SBA's eligibility requirements

          b.   The Coronavirus Aid, Relief, and Economic
Security ("CARES") Act is a federal law enacted on March 29,
2020, designed to provide emergency financial assistance to the
millions of Americans who are suffering the economic effects
caused by the COVID-19 pandemic. One source of relief provided
by the CARES Act was the authorization of up to $349 billion in
forgivable loans to small businesses for job retention and
certain other business expenses through the PPP.  On April 24,
2020, the Paycheck Protection Program and Health Care
Enhancement Act was signed into law, authorizing over $300
billion in additional PPP funding. The first round of the PPP

closed to new applications on August 8, 2020.  On December 27,
2020, the Consolidated Appropriations Act of 2021, which
included the Economic Aid to Hard-Hit Small Businesses,
Nonprofit, and Venues Act (the "Relief Act") was signed into
law, which provided an additional $284.5 billion for the PPP.
Under the Relief Act, certain businesses that had already
obtained a PPP loan under the original PPP were eligible for an
additional "second draw" PPP loan, provided they met certain
requirements.  The Relief Act also re-opened the application
period for "first draw" PPP loans to businesses that had not
been approved for a "first draw" loan prior to August 8, 2020,
or who may have been eligible to receive more funds during the
"first draw" period than they actually received.

          c.  The PPP allows qualifying small businesses and
other organizations to receive unsecured SBA-guaranteed loans.
PPP loan proceeds must be used by businesses on payroll costs,
mortgage interest, rent, and/or utilities, among other specified
expenses.  The PPP allows the interest and principal to be
forgiven if businesses spend the proceeds on these expenses
under certain conditions. Pursuant to the CARES Act, the amount
of PPP funds a business is eligible to receive is determined by
the number of employees employed by the business and their
average payroll costs.  Businesses applying for a PPP loan must
provide documentation to confirm that they have in the past paid
employees the compensation represented in the loan application.
The PPP is overseen by the SBA, which has authority over all PPP
loans, but individual PPP loans are issued by approved
commercial lenders who receive and process PPP applications and
supporting documentation.  PPP rules limit eligibility to
businesses in existence before on or about February 15, 2020.

          d.  Borrowers through the PPP are also eligible to
apply for loan forgiveness once all loan proceeds for which
forgiveness is requested have been used.

     10.  As set forth in greater detail below, between in or
about May 2020 and in or about April 2021, MARCUS FRAZIER, the
defendant, submitted at least seven applications for PPP loans
for various businesses controlled by FRAZIER, including Frazier,
Pringle & Myers, FPM Strategies, and Frazier Consulting.  These
applications relied upon fraudulent statements regarding the
number of employees of each business and the amount of payroll
involved in each business and were submitted, in many cases,
alongside fake bank statements designed to support FRAZIER's
false statements.  FRAZIER sought more than approximately $5.8
million in PPP loans and was awarded at least approximately

$2.17 million.  A substantial portion of the funds awarded were spent not on payroll for the Frazier Companies but, rather, on FRAZIER's personal expenses.

11.   Based upon my involvement in this investigation, including my review of documents produced to the SBA by certain financial institutions, I am aware of the following, in substance and in part:

a.   In or about September 2019, MARCUS FRAZIER, the defendant, opened a checking and a savings account at a New York, New York-based credit union (the "Credit Union Checking Account" and the "Credit Union Savings Account," collectively, the "Credit Union Accounts").

b.   Between in or about May 2020 and in or about March 2021, FRAZIER is believed to have submitted at least seven applications for PPP loans across the two rounds of funding. FRAZIER provided an address in New York, New York in connection with all seven of those applications.

c.   On or about May 22, 2020, FRAZIER submitted an application for a "first draw" PPP loan for Frazier Consulting through a small business and commercial real estate lender ("Lender-1").  As a result of the application submitted through Lender-1 (the "Lender-1 Application"), on or about June 2020, Frazier Consulting was issued a PPP loan in the amount of approximately $260,166.00 (the "Lender-1 Loan").

i.   In connection with the Lender-1 Application, FRAZIER indicated in loan application documents that Frazier Consulting had 12 employees and an average monthly payroll of $95,666.67.

ii.   In addition, FRAZIER provided, among other things, what purported to be monthly account statements for the months ending December 31, 2019, January 31, 2020 and February 29, 2020 for the Credit Union Accounts.  These purported statements reported end-of-month account balances for the Credit Union Checking Account in excess of $1.8 million; in truth and in fact, the Credit Union Checking Account had almost no funds in it for these months, as set forth below:

| Statement Period | Purported End-of-Month Balance | Actual End-of-Month Balance |
|---|---|---|
| 12/1/19 – 12/31/19 | $1,898,089.63 | $40.30 |
| 1/1/20 – 1/31/20 | $2,031,535.62 | $5.81 |
| 2/1/20 – 2/29/20 | $2,166,861.61 | $0 |

      iii.     The purported monthly account statements for the Credit Union Accounts submitted by FRAZIER in connection with the Lender-1 Application also each showed twelve withdrawals for "Frazier Consult Payroll," which totaled approximately $70,000 per month.  In truth and in fact, actual statements for the Credit Union Checking Account for those months did not show any withdrawals for "Frazier Consult Payroll" or anything similar.

      iv.     On or about June 17, 2020, the Lender-1 Loan was funded, and approximately $260,166 was deposited into the Credit Union Checking Account.  On or about the next day, June 18, 2020, FRAZIER wrote a check to himself from the Credit Union Checking Account for approximately $255,000.  The check was deposited into a personal account in FRAZIER's name at another financial institution ("Bank Account-1").

      d.  On or about June 14, 2020, FRAZIER submitted an application for a "first draw" PPP loan for Frazier, Pringle & Myers LLC through a business loan broker, which referred the application to an FDIC-insured financial institution (the "Lender-2 Application").  In the Lender-2 Application, FRAZIER sought a PPP loan in the amount of approximately $1,165,953. The loan was not funded by Lender-2.

      i.     In connection with the Lender-2 Application, FRAZIER submitted a worksheet providing certain requested information about Frazier, Pringle and Myers, LLC. FRAZIER indicated, in substance and in part, that Frazier, Pringle & Myers LLC had 48 employees and an average monthly payroll of $382,933.40.  In the worksheet, FRAZIER also certified that  "all data and information entered to support the PPP loan amount is true and correct and based on documentation I have hereby submitted with my application[,]" and "I understand that the data provided is being used for an application for a FEDERAL LOAN GUARANTEED BY THE SMALL BUSINESS ADMINISTRATION. Any errors, either intentional or not, can result in federal prosecution."

      ii.     In connection with the Lender-2 Application, FRAZIER submitted to Lender-2, among other things,

what purported to be monthly account statements for the Credit
Union Checking Account for the months ending December 21, 2019,
January 31, 2020, February 29, 2020, March 31, 2020, April 20,
2020, and May 31, 2020.  These purported statements reported
end-of-month account balances for the Credit Union Checking
Account in excess of $9.8 million; in truth and in fact, the
Credit Union Checking Account had almost no funds in it for
these months, as set forth below:

| Statement Period | Purported End-of-Month Balance | Actual End-of-Month Balance |
|---|---|---|
| 12/1/19 – 12/31/19 | $9,804,533.48 | $40.30 |
| 1/1/20 – 1/31/20 | $11,026,613.08 | $5.81 |
| 2/1/20 – 2/29/20 | $10,742,679.88 | $0 |
| 3/1/20 – 3/31/20 | $10,464,746.75 | –$49.14 |
| 4/1/20 – 4/30/20 | $10,186,813.58 | $0 |

        iii.    The purported monthly account
statements for the Credit Union Accounts submitted by FRAZIER in
connection with the Lender-2 Application also each showed 48
withdrawals for "Frazier Consult Payroll," which totaled in
excess of approximately $276,000 per month.  In truth and in
fact, actual statements for the Credit Union Checking Account
for those months did not show any withdrawals for "Frazier
Consult Payroll" or anything similar.

        e.  On or about June 24, 2020, FRAZIER submitted an
application for a "first draw" PPP loan for Frazier, Pringle &
Myers through a commercial lender ("Lender-3"), seeking a PPP
loan in the amount of $957,300.  The loan was not funded by
Lender-3.

        i.    In connection with the application to
Lender-3, FRAZIER submitted to Lender-3, among other things,
what purported to be monthly account statements for the Credit
Union Checking Account for the months ending January 31, 2020,
February 29, 2020, March 31, 2020, April 30, 2020, and May 31,
2020.  These purported statements reported end-of-month account
balances for the Credit Union Checking Account in excess of $9.9
million; in truth and in fact, the Credit Union Checking Account
had almost no funds in it for these months, as set forth below:

| Statement Period | Purported End-of-Month Balance | Actual End-of-Month Balance |
|---|---|---|
| 1/1/20 – 1/31/20 | $11,026,613.08 | $5.81 |
| 2/1/20 – 2/29/20 | $10,742,679.88 | $0 |
| 3/1/20 – 3/31/20 | $10,464,746.75 | -$49.14 |
| 4/1/20 – 4/30/20 | $10,186,813.58 | $0 |
| 5/1/20 – 5/31/20 | $9,908,880.48 | $0 |

ii.    The purported monthly account statements for the Credit Union Accounts submitted by FRAZIER in connection with the Lender-2 Application also each showed 48 withdrawals for "Frazier Consult Payroll," which totaled in excess of approximately $276,000 per month.  In truth and in fact, actual statements for the Credit Union Checking Account for those months did not show any withdrawals for "Frazier Consult Payroll" or anything similar.

iii.    In connection with the application to Lender-3, FRAZIER also submitted a list of employees on the payroll of Frazier, Pringle & Myers and their Social Security numbers ("SSNs").  Based on my communications with other law enforcement agents, I am aware that a sample of five of these purported employees' names and SSNs were provided to the Social Security Administration (the "SSA") and, based on SSA records, the purported employees' names do not match the SSNs provided by FRAZIER.  Accordingly, I believe that FRAZIER fabricated the payroll information for at least these five purported employees (the "Fictitious Employees").

f.  On or about August 2, 2020, FRAZIER submitted an application for a "first draw" PPP loan for Marcus Frazier d/b/a Frazier, Pringle & Myers through an FDIC-insured financial institution ("Lender-4") (the "First Lender-4 Application").  Marcus Frazier d/b/a Frazier, Pringle & Myers was issued a PPP loan in the amount of approximately $957,333.

i.    In connection with the First Lender-4 Application, FRAZIER indicated in loan application documents that Marcus Frazier d/b/a Frazier, Pringle & Myers had 48 employees and an average monthly payroll of $382,933.40.  FRAZIER also submitted a list of employees on the payroll of Frazier, Pringle & Myers and their SSNs; that list included the purported names and SSNs of the Fictitious Employees.

ii.    In addition, FRAZIER provided what purported to be monthly account statements for the months ending January 31, 2020 and February 29, 2020 for the Credit Union

Accounts; these purported statements reported end-of-month account balances for the Credit Union Checking Account of approximately $10,975,022.74 and approximately $10,697,268.91, respectively. In truth and in fact, as set forth above, the Credit Union Checking Account had end of-month account balances of approximately $5.81 as of January 31, 2020 and approximately $0 as of February 29, 2020.

iii.    As a result of FRAZIER's submission of the First Lender-4 Application, Frazier, Pringle & Myers was issued a PPP loan in the amount of approximately $957,333 (the "Lender-4 Loan"). On or about August 19, 2020, the Lender-4 Loan was funded, and approximately $957,333 was deposited into the Credit Union Checking Account. On or about the same day, FRAZIER wrote a check to himself from the Credit Union Checking Account for approximately $250,000. On or about August 26, 2020, FRAZIER wrote a second check to himself from the Credit Union Checking Account for approximately $700,000. Both checks were deposited into Bank Account-1.

g.    On or about January 10, 2021, FRAZIER submitted an application to forgive the Lender-4 Loan (the "Forgiveness Application"); that application is currently pending with the SBA. In the Forgiveness Application, FRAZIER indicated that the entirety of the loan proceeds from the Lender-4 Loan had been spent on payroll.

h.    On or about January 13, 2021, FRAZIER submitted an application for a "second draw" PPP loan for Marcus Frazier d/b/a Frazier, Pringle & Myers through Lender-4 (the "Second Lender-4 Application"). Marcus Frazier, d/b/a Frazier, Pringle & Myers was issued a second PPP loan in the amount of approximately $957,333. The funds were disbursed on or about March 18, 2021 and were returned to Lender-4 because the Credit Union Accounts had been restricted by the credit union; additionally, Lender-4 became aware of the instant investigation shortly after the funds were disbursed.

i.    In connection with the Second Lender-4 Application, FRAZIER indicated in loan application documents that Marcus Frazier, d/b/a Frazier, Pringle & Myers had 48 employees and an average monthly payroll of $382,933.40. FRAZIER also submitted a list of employees on the payroll of Frazier, Pringle & Myers and their SSNs; that list included the purported names and SSNs of the Fictitious Employees.

11

ii.     In connection with the Second Lender-4 Application, FRAZIER also submitted to the SBA what purported to be Articles of Organization for Frazier, Pringle & Myers, LLC, indicating, in substance and in part, that the entity was registered with the New York State Department of State, Division of Corporations as of at least on or about July 1, 2010.  Based on my review of information available through the publicly-available website of the New York State Department of State, Division of Corporations, I believe that FRAZIER, PRINGLE & MYERS, LLC was not, in fact, registered with the Division of Corporations until on or about July 1, 2020.  Based upon my review of these documents and information, I believe that FRAZIER registered Frazier, Pringle & Myers, LLC with the Division of Corporations well after the beginning of the COVID-19 pandemic and fabricated the registration documents submitted to Lender-4 in an effort to support his assertions that Frazier, Pringle & Myers was a longstanding business, with employees and a significant payroll.

i.  On or about January 14, 2021, FRAZIER submitted an application for a "first draw" PPP loan for Marcus Frazier d/b/a FPM Strategies through a financial institution ("Lender-5"), seeking a PPP loan in the amount of approximately $957,332.50 The loan was not funded by Lender-5.  In connection with the application through Lender-5, FRAZIER submitted a list of employees on the payroll of FPM Strategies and their SSNs; that list included the purported names and SSNs of the Fictitious Employees.  FRAZIER also provided, among other things, what purported to be monthly account statements for the months of July 2020 through December 2020 for the Credit Union Accounts; these purported statements reported end-of-month account balances for the Credit Union Checking Account that never fell below approximately $4.9 million.  The purported account statements also demonstrated significant monthly payroll outlays.  In truth and in fact, the Credit Union Checking Account did not have an end-of-month balance in excess of approximately $2,000 at any point during this time period, and no such payroll withdrawals were made from the account.

j.  On or about January 28, 2021, FRAZIER submitted an application for a "second draw" PPP loan for Frazier Consulting through a financial institution ("Lender-6"), seeking a PPP loan in the amount of approximately $239,100.  Lender-6 is a loan broker that refers applications to both FDIC-insured and non-FDIC-insured financial institutions.  The loan FRAZIER applied for was not funded by Lender-6.  In connection with the application through Lender-6, FRAZIER indicated, among other

things, that the average monthly payroll for Frazier Consulting was approximately $95,667 and that Frazier Consulting's gross revenue in the first quarter of 2020 was approximately $322,500. FRAZIER also submitted a list of employees on the payroll of Frazier Consulting and their SSNs; that list included the purported names and SSNs of the Fictitious Employees. FRAZIER also provided to Lender-6, among other things, what purported to be a monthly account statement for the month of February 2020 for the Credit Union Accounts, which indicated that the end-of-month account balance was approximately $2.16 million. The purported account statement also demonstrated significant payroll outlays. In truth and in fact, the Credit Union Checking Account had an end-of-month balance of $0 in February 2020, and no such payroll withdrawals were made from the account.

12. On or about April 5, 2021, I participated in a recorded telephone call with MARCUS FRAZIER, the defendant, on the pretext of the SBA inquiring further into the Second Lender-4 Application. In the course of that recorded telephone call, FRAZIER made the following statements, in substance and in part:

        a. FRAZIER stated, in substance and in part, that Frazier, Pringle & Myers is a management consulting firm consulting on, among other things, cyber issues for large clients including a prominent national technology company and a large international financial institution, among others.

        b. FRAZIER stated, in substance and in part, that he intended to use the proceeds of any loan issued as a result of the Second Lender-4 Application for "mostly payroll" and rent.

        c. FRAZIER stated, in substance and in part, that Frazier, Pringle & Myers employs approximately 48 employees. FRAZIER further stated that the firm's average monthly payroll is between approximately $370,000 and $380,000, and payroll is purportedly processed in house by FRAZIER. FRAZIER further stated that Frazier, Pringle & Myers has not terminated any employees since the pandemic began in approximately March 2020, nor cut salaries for any employees.

        d. FRAZIER stated, in substance and in part, that Frazier, Pringle & Myers is based in New York, and its employees work remotely.

e.   FRAZIER stated, in substance and in part, that Frazier, Pringle & Myers earned approximately $7 million in 2020, which was approximately $4 million less than in 2019.

f.   FRAZIER stated, in substance and in part, that neither FRAZIER nor any of his employees have claimed unemployment benefits since approximately March 1, 2020.

g.   FRAZIER stated, in substance and in part, that the First Lender-4 Loan proceeds went to payroll for Frazier, Pringle & Myers; as of the date of the call, the funds had been depleted.

h.   FRAZIER stated, in substance and in part, that Frazier Consulting is a management consulting firm focused on grant and contract writing services, that Frazier Consulting has 12 employees and an average monthly payroll of approximately $96,000 or $97,000 per month.

13.   Based on my participation in the investigation described above and my review of documents produced in response to grand jury subpoenas, I am aware of the following, in substance and in part:

a.   MARCUS FRAZIER, the defendant, is the sole signer on Bank Account-1.  Bank Account-1 is a savings account. FRAZIER also holds a checking account with the same financial institution that holds Bank Account-1.  FRAZIER is also the sole signer on the checking account ("Bank Account-2").

b.   As set forth above, the Lender-1 Loan was funded on or about June 17, 2020 in the amount of approximately $260,166.  On or about the following day, FRAZIER transferred the bulk of the proceeds of the Lender-1 Loan from the Credit Union Checking Account to Bank Account-1.  The balance in Bank Account-1 as of on or about June 18, 2020 was approximately $28,957.43.

c.   As further set forth above, the Lender-4 Loan was funded on or about August 19, 2020 in the amount of approximately $957,333.  Between on or about August 19, 2020 and on or about August 26, 2020, FRAZIER transferred the bulk of the proceeds of the First Lender-4 Loan from the Credit Union Checking Account to Bank Account-1.

d.   Between on or about June 18, 2020 and on or about April 7, 2021, FRAZIER transferred approximately $338,000 from

Bank Account-1 to Bank Account-2.[1]  The balance of Bank Account-1 prior to these transfers was approximately $28,957.43. Accordingly, more than $300,000 of the funds transferred from Bank Account-1 to Bank Account-2 constituted PPP loan proceeds. Further, during the period between on or about June 18, 2020 and on or about March 31, 2021, there is no evidence that any revenue associated with the purported business of any of FRAZIER's businesses was paid into Bank Account-1, nor that Bank Account-1 was used to pay payroll to any employees of any of FRAZIER's businesses.

      e.  The balance of Bank Account-2 prior to the transfers from Bank Account-1 that began on or about June 18, 2020 was approximately $4,000. Between on or about June 18, 2020 and on or about April 7, 2021, Bank Account-2 received the following credits: (i) approximately $338,000 from Bank Account-1, as set forth above, which was mostly loan proceeds; (ii) approximately $21,000 in unemployment benefits; (iii) approximately $4,125 transferred directly from the Credit Union Checking Account; and (iv) approximately $7,650 in other miscellaneous credits.  Thus, the vast majority of funds in Bank Account-2 during the period between on or about June 18, 2020 and on or about April 7, 2021 were PPP loan proceeds.  Further, there is no evidence that any revenue associated with the purported business of any of FRAZIER's businesses was paid into Bank Account-2 during this period, nor that Bank Account-2 was used to pay payroll to any employees of any of FRAZIER's businesses.

      f.  Rather than using Bank Account-2, which, as set forth above, was funded primarily with PPP loan proceeds, to pay payroll, FRAZIER appears to be using Bank-2 to fund his personal expenses.  During the period between on or about June 18, 2020 and on or about April 7, 2021, FRAZIER utilized the funds in Bank Account-2 to spend approximately $124,982 on hotels, including more than approximately $88,791 at a luxury hotel located in Miami, Florida.  During the same period, FRAZIER utilized the funds in Bank Account-2 to spend approximately $63,000 on restaurants and food service, approximately $17,000 on

---

[1]  As set forth herein, I have reviewed monthly account statements for both Bank Account-1 and Bank Account-2, which are held by the same financial institution ("Bank-1").  To date, Bank-1 has provided account statements for Bank Account-1 through March 31, 2021 and for Bank Account-2 through April 7, 2021.

transportation using the ride-hailing app Uber, approximately $16,519 on airline travel, and approximately $11,000 on clothing.

WHEREFORE, deponent prays that an arrest warrant be issued for MARCUS FRAZIER, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/Simon Dinits with permission JLC
_____
SIMON DINITS
Special Agent
Office of the Inspector General
U.S. Small Business Administration


Sworn to me through the
transmission of this Affidavit
by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1,
this  22nd day of April, 2021


_____
JAMES L. COTT
United States Magistrate Judge

16